**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOMARIE S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-7029 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jomarie S.[1] appeals the decision of the Commissioner of the Social Security Administration denying her application for disability benefits. The parties have filed cross motions for summary judgment. As detailed below, Plaintiff's motion for summary judgment (Dkt. 15) is GRANTED and Defendant's motion for summary judgment (Dkt. 21) is DENIED. The case is remanded for further proceedings consistent with this opinion.

**I.     Background**

Plaintiff filed for disability insurance benefits and supplemental security income on September 22, 2017, alleging a disability onset date of May 24, 2004. (Administrative Record ("R.") 14.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 10, 2019. (*Id.*) On November 14, 2019, ALJ Cynthia Bretthauer issued an unfavorable decision finding that Plaintiff was not disabled as defined in the Social Security Act. (R. 14-30.) On September 24, 2020, the Appeals Council denied Plaintiff's request for review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42

---

[1]     In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

U.S.C. § 405(g); *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ's opinion followed the five-step analytical process required by 20 C.F.R. § 416.920. (R. 379-394.) At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 24, 2004. (R. 17.) At Step Two, the ALJ found Plaintiff had the severe impairments of non-epileptic convulsions/pseudoseizures; Postural Tachycardia Syndrome ("POTS")/dysautonomia; intermittent migraine headaches; anxiety disorder; autism spectrum disorder; conversion disorder; depressive disorder; and Attention-Deficit Hyperactivity Disorder. (*Id*.) At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 22.) Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: frequently stoop, crawl, crouch, kneel, and climb stairs and ramps; occasionally balance; never climb ladders, ropes, and scaffolds; avoid even moderate exposure to noise and vibration; is limited to simple, repetitive, and routine tasks of 1-3 step instructions, and only routine changes; occasional contact with the general public; working primarily alone, having only occasional contact with supervisors and coworkers, and not having to interact on joint tasks; and no fast-paced work or high production quotas. (R. 23.) At Step Four, the ALJ determined Plaintiff was incapable of performing her past relevant work. (R. 28.) At Step Five, the ALJ found that the are jobs that exist significant numbers in the national economy Plaintiff can perform, given her age, education, work experience, and RFC. (R. 29.) Because of these determinations, the ALJ found Plaintiff not disabled under the Social Security Act. (R. 30.)

Plaintiff's primary medical issue is that she often faints or has seizures. Indeed, Plaintiff became unconscious during questioning from the ALJ at her administrative hearing.  (R. 58-60.) There are records of Plaintiff fainting or having a seizure on May 23, 2018 (R. 2369), June 27,

2018 (R. 2366), July 30, 2018 (R. 1040), August 9, 2018 (R. 2363), October 22, 2018 (R. 2360), October 23, 2018 (R. 2356), October 30, 2018 (R. 2353), November 2, 2018 (R. 2350), January 28, 2019 (R. 2347), February 4, 2019 (R. 2344), February 25, 2019 (R. 2341), April 3, 2019 (R. 2338), April 26, 2019 (R. 2335), May 16, 2019 (R. 2383), May 30, 2019 (R. 2324). The etiology of Plaintiff's syncope/seizure episodes is uncertain; various medical providers have suggested that it might be pseudoseizures, orthostatic hypotension, mild Chiari I malformation, vitamin deficiency, or POTS. (R. 17.)

As a child, Plaintiff was diagnosed with ADHD and was on an individualized education plan. (R. 18.) As an adult, Plaintiff has been diagnosed with generalized anxiety disorder, autism, and conversion disorder. (*Id.*) While she continued to work as a grocery store cashier until 2017, her work was only part time and did not rise to the level of substantial gainful activity. (R. 17, 1989).

Plaintiff's treaters provided several opinions in the administrative record. On February 18, 2019, Dr. Rena Goodfriend-Leve, M.D., Plaintiff's treating psychiatrist, provided a Mental Residual Functional Capacity Statement. (R. 1436.) She stated that Plaintiff suffered from anxiety disorder, conversion disorder, and autism spectrum disorder since February 15, 2016. (*Id.*) Dr. Goodfiend-Leve noted Plaintiff would likely faint three or more times per month due to anxiety. (R. 1438.) She further opined that Plaintiff's medical conditions would cause her to be off-task more than 30% of the time, she would likely be absent from work more than six days per month as a result of her mental impairments, and that she could only perform a fulltime job with 20% efficiency. (*Id.*)

The ALJ found Dr. Goodfriend-Leve's opinion to be unpersuasive. In its entirety, the ALJ's explanation for her decision was as follows:

> Dr. Goodfriend-Leve based her opinion on her treatment of the

3

> claimant. However, Dr. Goodfriend-Leve's estimate that the claimant would be "precluded from 5-15% of performance, "off-task" "more than 30%" of the day, only 20% "efficient" and absent "more than 6 days" is speculative at best and lacking any support in the medical record. Those conclusions are rejected as unsubstantiated by objective medical evidence or clinical findings. Further these estimates are not supported by Dr. Goodfriend-Leve with any objective evidence or findings. She simply notes "psychiatric eval" (sic) as the basis of her opinion. However, such limited psychological functioning is inconsistent with the treatment notes in the record. For instance, the claimant when treated is noted as less anxious, less overwhelmed, calmer, with no panic attacks, no sleep disturbance, decreased ruminations, no agitation, no racing thoughts, no fainting, and no seizures. Treatment notes indicate only difficulty with social skills as a continuing symptom of the claimant.

(R. 20-21 (internal citations omitted).)

Plaintiff's primary care physician, Jini Han, M.D., also submitted a Physical Residual Function Capacity Statement. (R. 2476.) Dr. Han noted that Plaintiff's diagnoses were depression, anxiety, Asperger Syndrome, epilepsy, pseudoseizures, Chiari malformation, dysautonomia, autism, and migraines. (*Id*.) These diagnoses caused dizziness, fatigue, syncope, and weakness. (*Id*.) Dr. Han stated Plaintiff would need to lie down for 45 minutes at a time for about six hours in an eight-hour workday due to her dizziness and hypotension. (R. 2477.) She further found Plaintiff would need to take unscheduled work breaks of 30 minutes every hour and to frequently lie down/sit quietly during those breaks. (R. 2478.) Dr. Han added that Plaintiff suffered from frequent syncopal episodes and pseudoseizures, that her medical conditions would cause her to be off-task more than 30% of the time, she would likely be absent from work more than five days per month as a result of her impairments, and that she could only perform a fulltime job with less than 50% efficiency. (R. 2479.)

In assessing Dr. Han's opinion as unpersuasive, the ALJ wrote:

> Dr. Han based her opinion on her treatment of the claimant. However, Dr. Han's estimate that the claimant would be "off-task" more than 30% of the day, and would be absent from work, unable to complete an 8-

4

hour workday 5-days or more per month, and efficient less than 50% on a sustained basis due to "inability to stand or any significant time" is speculative at best and lacking any support in the medical record. Those conclusions are rejected as unsubstantiated by objective medical evidence or clinical findings. Further, Dr. Han offers no consideration of the claimant's habit of refusing treatment (against medical advice), her "vegetarian" (carbohydrate) diet, which likely causes her vitamin deficiency/low potassium, refusal to follow her medically recommended diet, or that the claimant continued to work through 2017, and is noted to do well at her work as a cashier. Dr. Han noted diagnoses of epilepsy and Chiari malformation. However, the record indicates that the claimant's seizures are non-epileptic. Further. She is noted as having a mild, possible Chiari I malformation. The record also does not show the gait disturbance noted by Dr. Han. Her gait is always noted as "normal" and/or "steady. However, as the treatment notes indicate "fainting" and these are documented in other treatment notes the undersigned finds this assessment to be somewhat persuasive.

(R. 24-25 (internal citations omitted).)

## II.     Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d

5

936, 941 (7th Cir. 2002) (internal citation omitted).

### III. Discussion

For claims filed after March 27, 2017, the old "treating physician rule"[2] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. § 404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.* Regarding the consistency factor, the regulation states "[t]he more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be." 20 C.F.R. § 404.1520c(c)(2).

The Court does not believe that the ALJ followed the requirements in the Social Security

---

[2]    20 C.F.R. § 404.1527.

Regulations when she considered the opinions of Drs. Goodfriend-Leve and Han. Regarding the supportability prong, the Court does not believe the ALJ's conclusion that Dr. Goodfriend-Leve's opinion is "lacking any support in the medical record" and "unsubstantiated by objective medical evidence or clinical findings" is supported by substantial evidence. For example, Dr. Goodfriend-Leve's opinion regarding absenteeism has ample support in the medical records and is supported by significant clinical findings, as Plaintiff faints regularly; moreover, these fainting episodes have been linked to her anxiety and sometimes occurred while she was at work. (R. 1999.) The idea that Plaintiff would be absent from work regularly due to syncope or seizures is supported by the record. Additionally, the Court does not believe Dr. Goodfriend-Leve's reliance on psychiatric evaluation is a valid reason to discount her opinion. Psychiatric evaluations are the main tool for psychiatrists to assess their patients, and the Court is unclear why the ALJ believed that citing those evaluations was evidence that Dr. Goodfriend-Leve's opinion was not supportable.

The Court does not believe the ALJ's consistency discussion was adequate either. While one treatment note stated Plaintiff was "less anxious, less overwhelmed, and calmer," it does not elucidate Plaintiff's baseline state and, therefore, is of limited utility; one can be improved without being sufficiently improved to hold gainful full-time employment. For example, the record suggests that any improvement was not significant, considering the regular episodes of syncope and/or seizures in 2018 and 2019 discussed above. To be clear, the ALJ is not required to accept Dr. Goodfriend-Leve's opinions as persuasive, but she must follow the regulations in evaluating those opinions. The categorical statements made by the ALJ are not supported the record in this case, and a more nuanced discussion regarding the supportability and consistency of the treating psychiatrist's opinion is necessary.

The ALJ similarly erred in her assessment of Dr. Han's opinion. Again, the Court does not believe the ALJ's conclusion that Dr. Han's opinion is "lacking any support in the medical record"

and "unsubstantiated by objective medical evidence or clinical findings" is supported by substantial evidence. Dr. Han's opinions regarding absenteeism likewise are supported in the medical records and by significant clinical findings, as discussed above. The Court also finds that the ALJ's discussion regarding consistency misrepresents the record. The vast majority are of the supposed incidents of Plaintiff refusing treatment are Plaintiff choosing not to be transported to the emergency room by fire department emergency medical technicians who treated Plaintiff after she fainted or had a seizure. (R. 2323-2377.) The Court does not believe this can be accurately characterized as refusing treatment against medical advice. In the other example the ALJ cites, Plaintiff was being treated for ear pain after fainting and was "[o]ffered ER evaluation today for CT scan and [Plaintiff] refused." However, the treatment plan was to follow up with her primary care physician in 1-2 days for re-evaluation and Plaintiff "underst[ood] and agree[d] with the plan." (R. 2001.) Although it is unclear whether Plaintiff was re-evaluated by Dr. Han after this incident, she did meet with a neurologist "in consultation at the request of Dr. Han" 17 days later. (R. 2002.) The clear implication is that she followed up with Dr. Han, who referred to a neurologist. A patient declining further optional diagnostic testing and following through with the recommended treatment plan does not qualify as refusing medical treatment against medical advice.

The Court also does not believe that Dr. Han's failure to mention Plaintiff's diet and its effect on her potassium levels renders the opinion inconsistent; the ALJ herself did not find hypokalemia to be a severe impairment and it is only one of many competing theories for Plaintiff's fainting and seizures.[3] Dr. Han's decision not to include Plaintiff's work history does not render her opinion inconsistent with the medical record; Dr. Han was offering a medical opinion, not a vocational assessment, and the ALJ found that Plaintiff's work had not risen to the level of substantial gainful

---

[3] The citation for Plaintiff's failure to follow her medically recommended diet also mischaracterizes the record; when presented with information regarding dietary changes, the document only notes that Plaintiff was "resistant to suggestions/recommendations," but does not say she refused to follow her medically recommended diet. (R. 1401.)

activity since 2004. The Court does not see how Plaintiff's part-time job at a grocery store is relevant to the consistency of Dr. Han's opinion with the medical record. The Court recognizes that certain portions of Dr. Han's opinions may be at odds with the record; it is true that Plaintiff's seizures are non-epileptic in nature and that Dr. Han noted epilepsy as one of Plaintiff's diagnoses. However, the remainder of the diagnoses listed by Dr. Han are clearly supported by (and consistent with) the record, and the etiology of the Plaintiff's seizures is less important than their effect on Plaintiff's ability to attend and perform a full-time job. As stated earlier, the Court is not suggesting the ALJ must agree with Dr. Han's opinion, but in assessing the record, the ALJ must fairly characterize the nature of the medical evidence and ensure that the conclusions are supported by substantial evidence. The Court finds that the ALJ did not do so here and remands this case.

## IV. Conclusion

Plaintiff's motion for summary judgment (Dkt. 15) is GRANTED and Defendant's motion for summary judgment (Dkt. 21) is DENIED. The case is remanded for further proceedings consistent with this opinion.

ENTERED:  June 10, 2022

Susan E. Cox,
United States Magistrate Judge

9